# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

ROSALIE GALLEGOS,

      Plaintiff,

v.                                                                          Civ. No. 21-1169 DHU/GJF

KILOLO KIJAKAZI, *Acting*
*Commissioner of the*
*Social Security Administration*,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's "Motion to Remand to Agency" [ECF 22] ("Motion"). The Motion is fully briefed. *See id.*; ECFs 24 ("Resp."), 26 ("Reply"). Having meticulously reviewed the entire record, and for the reasons articulated below, the Court **RECOMMENDS**[1] the Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

Plaintiff is a 69-year-old divorced woman living with a "gentleman friend" in Albuquerque, New Mexico. *See, e.g.*, Administrative Record ("AR") at 45–46, 719, 837. She earned her master's degree in administration in 1986 and, prior to taking early retirement, put her degree to use as an assistant principal, school district curriculum director, and program coordinator. *E.g.*, *id.* at 45, 48–49, 720–22. Plaintiff describes these positions as requiring her to walk at least one-and-a-half blocks daily and spend up to four hours per day typing emails or reports. *E.g.*, *id.* at 718, 22–23, 25–31.

---

[1] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's March 18, 2022, Order of Reference.  ECF 15.

Plaintiff alleges her disability began in July 2010 due to a combination of rheumatoid arthritis, spinal arthritis, scoliosis, a form of lupus, fibromyalgia, an autoimmune disease called Sjogren's syndrome, anxiety, and depression.  *Id.* at 227, 477–81, 693, 717.[2]  According to her, these conditions precluded her from working from 2010 to 2015.  *But see id.* at 302 (reporting to her doctor that she was enjoying her newfound free time post-retirement "until she decide[d] what next to do with her career").  Primarily, she alleges that her physical limitations are due to pain despite acknowledging that pain medications adequately treated those symptoms.  *E.g.*, *id.* at 984 ("Lyrica . . . help[s] her pain").  Further, she contends that she is now forgetful and groggy due to a combination of medications side effects along with alleged anxiety and depression.  *Id.*; *but see id.* at 81 (Plaintiff observing in 2017 that she "ha[d] no idea" when her anxiety began manifesting), 241 (Plaintiff admitting in 2017 that her conditions ***do not affect*** her memory, concentration, understanding, ability to follow instructions, or social function), 503 (mentioning nothing about depression and describing Plaintiff as "pleasant"), 567 (reporting that Plaintiff presented herself as "in no acute distress" with an "affect [that] seemed normal and [a] mood [that] seemed normal" too).

Plaintiff first applied to the Social Security Administration ("SSA" or "Commissioner") for disability insurance benefits in 2015.  The SSA denied her claim initially, on reconsideration, by administrative law judge ("ALJ") Michelle Lindsay after a hearing, and by the Appeals Council.  *Id.* at 16–26, 795–96.  Once the Appeals Council declined to revisit the ALJ's decision,

---

[2] Plaintiff also claims to suffer from osteopenia, latent tuberculosis, and sicca, but the ALJ determined these physical conditions were "not severe, considered separately or in combination with any other impairments . . . [because] they either had only a minimal impact on [Plaintiff], responded well to treatment, or did not exist continuously for a year."  AR at 696.  Plaintiff does not specifically challenge these determinations on appeal.

the decision became "final" agency action appealable to this Court.  20 C.F.R. § 404.984; *accord*

5 U.S.C. § 704.[3]

On September 11, 2020, another judge of this Court reversed the Commissioner's

decision.  Memorandum Opinion and Order at 1, *Gallegos v. SSA* (Civ. No. 19-397).  Essentially,

the Court reversed because Plaintiff, self-represented at the hearing, missed an opportunity to

show that "her past relevant work w[as] different than th[at] envisioned for her job title in the

Dictionary of Occupational Titles" ("DOT") after the ALJ cut her off mid-question.   But

Plaintiff's victory may have been pyrrhic.  In 2020, on remand and after another hearing, the

ALJ again found Plaintiff not disabled.  AR at 693–705 (finding that Plaintiff nevertheless had

the residual functional capacity ("RFC") to perform her previous work).  On December 8, 2021,

Plaintiff filed for review in this Court of the Commissioner's decision.  ECF 1.

## II.   STANDARD OF REVIEW

Disability is the inability to "engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).

### A.  Sequential Evaluation Process

The SSA processes disability benefit applications with a five-step sequential evaluation

process.  *E.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citing 20 C.F.R. § 416.920).  The

first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial

gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments,"

and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or

---

[3] "[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, . . . the decision of the administrative law judge . . . will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."

combination of impairments prevents h[er] from performing h[er] past work."  *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant bears the burden of proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987).

If the claim reaches step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of h[er] age, education, and work experience."  *Yuckert*, 482 U.S. at 142, 146 n.5 ("An individual shall not be considered . . . disable[ed] unless [s]he furnishes such medical and other evidence . . . as the [Commissioner] may require.").

### B.  Standards of Review

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual.  *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (internal citations omitted) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").  If the ALJ applied the correct legal standards and supported h[er] findings with substantial evidence, the Commissioner's decision stands.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether [s]he "followed the specific rules of law" required for "weighing particular types of evidence in disability cases."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so."  *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

4

The Commissioner's factual findings, on the other hand, stand so long as they are "supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted).

Under this substantial evidence standard, a court cannot convert its meticulous review of the full record into "reweigh[ing] of the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Put differently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court [c]ould justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal citation and quotation omitted) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

### C.  Residual Functional Capacity

The RFC assessment is one of the ALJ's factual findings—"a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *8.  This assessment requires that the ALJ "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," specifically by addressing the claimant's "exertional and nonexertional capacities" to perform work.  *Id.* at *2, *15.  In addressing the claimant's exertional capacity, the ALJ must separately consider the claimant's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *15.  In considering the claimant's nonexertional capacity, the ALJ must assess the claimant's physical abilities that are "not reflected in the seven strength demands," the claimant's mental abilities, and all other "abilities affected by impairments:"

> Nonexertional capacity considers all work-related limitations . . . that do not depend on . . . physical strength . . . .  It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision).  In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

*Id.* at *2, *16-17; 20 C.F.R. § 404.1545(d).

The "failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case."  SSR 96-8p, 1996 WL 374184, at *10 (emphasis added).  "The concern is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'"  *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *11).  But an ALJ's decision not to discuss a claimant's ability

to perform all "specific work-related functions" is not by itself reversible error—particularly if the ALJ "did not overlook" the functional limitation complained of or the failure "was not critical to the outcome of the case." *Hendron*, 767 F.3d at 957.

### D.  Medical Opinion Evidence

Properly formulating a claimant's RFC requires that the ALJ consider all relevant medical opinions[4] in the record.  *E.g.*, *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotations omitted).  "[S]he must also discuss the weight [s]he assigns" to each opinion. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).  Regulations and case law prescribe the analytical framework an ALJ must follow, and the failure to do so constitutes legal error notwithstanding the propriety of the substantive determination made.

Generally, the ALJ must evaluate medical opinions according to at least some of the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *E.g.*, *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *accord* 20 C.F.R. §§ 404.1527(c), 416.927(c).

---

[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *accord* Soc. Sec'y Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2.  Information from "other sources," medical or not, may also  "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *see* SSR 06-03p, 2006 WL 2329939, at *2.

When a treating physician[5] formulates a medical opinion, and the claim was filed before March 27, 2017—like here—the ALJ must evaluate the opinion using a two-step construct. First, the ALJ analyzes whether the opinion deserves "controlling weight." *Watkins*, 350 F.3d at 1300. The opinion presumably receives such weight unless: (1) it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or (2) it is "[in]consistent with the other substantial evidence from the record." *Id.* (internal quotes omitted). When either of those two conditions exists, the opinion does not receive controlling weight. In that case, the ALJ proceeds to the second phase of analysis: deciding what, if any, weight to assign the opinion, and providing explanatory reasons tied to the *Watkins* factors. *Krauser*, 638 F.3d at 1330. The provided reasons must be "good reasons" and written "in [the] notice of determination or decision." 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96–2p, 1996 WL 374188, at *5; *Doyal*, 331 F.3d at 762.

The Tenth Circuit does not require an ALJ to list or apply these six factors expressly. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (declining to require ALJs "apply *expressly* each of the six [*Watkins*] factors in deciding what weight to give a medical opinion"). The decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* These reasons are reviewed only for substantial evidence. *Doyal*, 331 F.3d at 764; *accord* SSR 96–2p, 1996 WL 374188, at *5.

### E.  Post-Hoc Rationalization

Bedrock administrative law principles require that federal agencies "engage in reasoned decisionmaking . . . based on a consideration of the relevant factors," and reviewing courts

---

[5] A treating physician is an acceptable medical source who has treated a claimant and maintains an ongoing relationship with her.

typically focus on "whether there has been a clear error of judgment."  *E.g.*, *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (internal quotations and citations omitted).  But "deciding whether agency action was adequately explained requires[ ] first[ ] knowing where to look."  *Id.* at 1907.  The explanation must come from "the grounds that the agency invoked when it took the action."  *Michigan v. EPA*, 576 U.S. 743, 758 (2015).

Consequently, agencies cannot defend their decisions with a line of reasoning conceptually distinct from the grounds stated in its final decision.  *E.g.*, *DHS*, 140 S. Ct. at 1908; *accord Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947).  Under these governing principles, once a plaintiff initiates judicial review, the agency cannot adopt a new reason in court; it can only either (1) elaborate on the agency's original reasoning or (2) reconsider the issue by taking new agency action.  *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 5–6 (D.C. Cir. 2006); *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam); *Chenery*, 332 U.S. at 201.  If the agency opts to expound on its original rationale rather than starting fresh, the potential for post-hoc rationalization emerges.

Identifying post-hoc rationalization is essentially a question of abstraction.  It depends on whether the position taken on judicial review, despite "purporting to explain" the agency's original reasoning, "bears little relationship to that of its predecessor."  *DHS*, 140 S. Ct. at 1908–09 (rationalizing post-hoc by arguing that a program is "legally questionable" and making policy arguments when the agency originally declared it "illegal" without mention of policy); *see also Snell v. Apfell*, 177 F.3d 128, 134 (2d Cir. 1999) (rationalizing post-hoc by advancing an untimeliness rationale conceptually distinct from the agency's previous reasoning); *Arakas v. Comm'r, Soc. Sec'y Admin.*, 983 F.3d 83, 109 (4th Cir. 2020) (rationalizing post-hoc by

recasting an ALJ's unsupported "lay assumption" as a reference to record evidence from a radiologist).

## III.  PLAINTIFF'S CONTENTIONS

Together, Plaintiff's Motion and Reply present four arguments.  First, Plaintiff challenges the ALJ's factual determinations themselves because the ALJ failed to "meaningfully" consider Plaintiff's alleged mental limitations in the process of formulating the RFC and argues for a reimagined RFC that would add non-exertional limitations.  Mot. at 22–23; Reply at 3–4.[6] Second, she challenges the ALJ's treatment of medical opinion evidence—specifically, the treating-physician opinion of Dr. Vijayalakshmi Kumar.  Mot. at 23–25; Reply at 1–3.  Third, Plaintiff implicitly contends that the ALJ erred in concluding that she could have returned to her previous work during the relevant time period.  Mot. at 22.  Last, Plaintiff characterizes the Commissioner's entire Response as impermissible post-hoc reasoning.  *See* Reply at 4–7.  She insists that each of her four arguments provides independent grounds to reverse or remand.  Mot. at 22–25.

## IV.  ALJ'S DECISION AND FINDINGS

Having followed the SSA's five-step process and after "careful consideration of all the evidence," the ALJ found that Plaintiff was not "disab[led] within the meaning of the Social Security Act" at all relevant times.[7]  AR at 19; *accord* 20 C.F.R. §§ 404.1520(a), 416.920(a).

---

[6] As explained below, such arguments fundamentally conflict with the "substantial evidence" standard and can be summarily denied.  But in the interest of comprehensive analysis, the Court will explain why the ALJ credibly concluded that Plaintiff does not have mental limitations capable of impacting her RFC.

[7] Because a claimant's eligibility for disability insurance benefits depends on establishing disability on or before the date last insured, as required by the Social Security Act, the relevant time period for our purposes is July 1, 2010, to December 31, 2015.  AR at 695; *accord* 42 U.S.C. §§ 416(i), 423.

### A.  Steps One, Two, and Three

At step one, the ALJ noted that Plaintiff's alleged onset date was July 1, 2010, and that her disability-insurance-benefit eligibility expired December 31, 2015.  AR at 695.  Further, the ALJ found that Plaintiff engaged in no substantial gainful activity during the relevant timeframe. *Id.*  At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments: "rheumatoid arthritis[ ], fibromyalgia, arthritis of the spine, systemic lupus erythematosus, Sjogren's syndrome, and hypothyroidism." *Id.*  This list notably excluded Plaintiff's supposed depression and anxiety because, as the ALJ explained, these mental conditions either: (A) had only de minimis effects on Plaintiff's "ability to perform basic mental work activities," (B) responded well to treatment, or (C) failed to meet the SSA's twelve-month threshold durational requirement. *Id.* at 696.

After explaining why the record insufficiently supported limitations for Plaintiff's alleged depression and anxiety, the ALJ next turned to the "paragraph B" criteria.  Satisfying these criteria requires finding either one "extreme" limitation or two "marked" limitations among four broad areas of functioning: "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself."  AR at 696.

The ALJ found Plaintiff presented a mild limitation in "concentrating, persisting[,] or maintaining pace." *Id.* at 696 (citing Plaintiff's 2015 function report).  In support, the ALJ noted that some of Plaintiff's written and verbal representations showed minor limits on her capacity to "pay attention" and "follow written [or verbal] instructions"—albeit only when taking pain medications. *E.g.*, *id.* at 241 (acknowledging the capacity to pay attention for "most of waking hours" and follow instructions "fine" when unmedicated); *see also id.* at 734 ("[C]oncentration is

difficult for me sometimes[ ] when I'm on [pain medications].")  The ALJ noted, however, that based on Plaintiff's self-described daily activities, Plaintiff's limitation was no more than mild at best.  *Id.* at 696 (claiming the ability to "drive, prepare meals, watch TV, read, manage funds, use the internet, handle her own medical care," "prepare her own taxes," "pay bills," "perform simple maintenance," "get along with others," "deal appropriately with authority," present as "pleasant and cooperative" to physicians, and maintain her personal hygiene).  Further, the ALJ saw nothing in the record documenting Plaintiff's alleged distractibility.  *Id.* (treating the absence as persuasive but non-dispositive).

Besides the one minor limitation, the ALJ found insufficient evidentiary support for further limiting Plaintiff's RFC based on her memory, sociability, or adaptability.  *Id.*  The ALJ pointed out that Plaintiff herself did not believe she had limitations in the remaining three functional areas.  *Id.*  Indeed, the record showed Plaintiff possessed average memory, cognition, emotional intelligence, and life management skills.  *See id.* (citing objective medical evidence, activities of daily living, and Plaintiff's own statements).

At step three, the ALJ concluded that none of Plaintiff's physical or mental impairments, alone or in combination, reached the severity of a "listed" impairment.  *Id.* at 697–98; *accord* 20 C.F.R. § 404, Subpart P, App'x 1.  The ALJ made this finding only after identifying each listing's requisite medical findings and the record's lack of those necessary facts.  AR at 697–98.

**B.  Step Four**

Because none of Plaintiff's impairments satisfied or medically equaled a listed impairment, the ALJ moved on to formulate Plaintiff's RFC.  *Id.* at 698.  "After careful consideration of the entire record," the ALJ assessed Plaintiff's RFC in pertinent part as:

> [T]he [RFC] to perform light work . . . , except she could occasionally climb stairs and ramps, balance, stop, crouch, kneel, and crawl.  She could never climb ladders, ropes, or scaffolds.  She was limited to occasional handling and fingering.  She must have avoided more than occasional exposure to extreme cold.

*Id.*  The ALJ anchored this finding to the record's objective medical evidence, examining and treating physician opinions, and Plaintiff's self-described symptoms.  *Id.* at 698–704.  This information led her to conclude that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause her alleged symptoms," the record did not support the subjective symptoms that Plaintiff described to the SSA.  *Id.* at 699.

1. Exertional Limitations

The RFC assessment first considered Plaintiff's statements about her allegedly painful rheumatoid arthritis symptoms.  *Id.* at 699 (citing record evidence from both the 2015 and 2021 administrative proceedings).  Plaintiff testified only to pain she felt in her limbs—namely in her ankles, toes, hands, and fingers.  *Id.* at 700 (noting no complaints of back pain to physicians).  According to Plaintiff, the pain rendered her unable to reenter the workforce at all relevant times.  *But see id.* at 302 (noting that Plaintiff said she was exploring her career's "next" step immediately following her early retirement).

The ALJ first considered Plaintiff's statements from her function report, her 2017 hearing testimony, and her 2021 hearing testimony.  The ALJ observed that Plaintiff now alleges symptoms considerably more limiting since her first hearing—despite the allegations, both then and now, relating to the same fixed time period in the past.  In 2017, before she obtained counsel, Plaintiff estimated her daily limit for staying on her feet from 2010 to 2015 was approximately seven hours.  *Id.* at 53; *see also id.* at 61 (estimating that, in 2015, she could stand for two to four hours daily and that "[she] was able to" walk "440 [meters] . . . about four or five times" per day).  Plaintiff also claimed discomfort if performing dexterous movements which limited her

capacity to type reports and emails on a computer.  *Id.* at 53–54.  She estimated that she could perform such hand movements no more than 25% per eight-hour day—slightly longer if wearing a wrist brace.   *Id.* at 699 (noting that her past work as a principal required no more than approximately 25% of her day at the computer—within Plaintiff's self-assessed limits); *but see id.* at 60 (reporting in 2017 that she could sew for "[a]bout two hours").  Further, the ALJ found that Plaintiff contradicted herself regarding when, if ever, her medications alleviated her symptoms.  *Id.* at 700 (noting that Plaintiff first asserted her condition had improved since the relevant time period but, in 2021, she began insisting the opposite); *but see id.* at 56 (describing further improvement from her 2015 state due to a "real miracle drug" commenced in 2016).

The ALJ next turned to the record's objective medical evidence.  She found that a review of the record as a whole further undercut Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms."  *Id.* at 699; *accord* SSR 16-3p.  For one, despite objective evidence of minor physical abnormalities, Plaintiff's physicians reported no symptoms nearly as drastic as what Plaintiff claimed to the SSA.  *Compare id.* at 700 (citing findings of mild stigmata, slight swelling, a small ganglion, and subtle arthritic manifestations in the joints), *with id.* at 306 (reporting to physicians back in 2009 that she had "no problems ambulating," exhibited "great energy level[s]," showed excellent response to her medications, and was "doing really well [without] much pain at all").  The ALJ noted that, to the extent that Plaintiff complained of symptoms, her physicians' records strongly suggested effective treatment through medication.  *Cf. id.* at 302–04 (observing only slight symptoms following the cessation of one medication).  Considered alongside the positive reviews she gave one medication at the hearing, Plaintiff's statements corroborated the objective medical records suggesting adequate symptom management at all relevant times.

Further, the ALJ noted that records from the relevant period routinely reported normal physical examination findings.  *Id.* at 700–02 (reviewing records from multiple providers that showed no abnormal findings apart from a brief rash, occasional mild joint tenderness, and minor knee crepitation in late 2015) *accord id.* at 480, 487, 505, 519–20.  Indeed, Dr. Kumar's records from 2012—the year that Plaintiff established care—to 2015 consistently reported Plaintiff demonstrating normal joint mobility and gait.[8]  Where Dr. Kumar's records showed abnormalities, the ALJ (and Dr. Kumar) noted that medical treatment was conservative and effective.  *E.g.*, *id.* at 701–03 (citing *id.* at 470, 501, 509, 512, 521, 658).[9]

Last, the ALJ considered Dr. Kumar's medical opinion regarding Plaintiff's physical condition.  The ALJ declined to assign the opinion "controlling" weight, specified the degree of weight she gave instead—"little"—and explained why.  *See id.* at 703–04.  Primarily, the ALJ emphasized the inexplicable inconsistency between Dr. Kumar's relatively mundane recorded observations and the extreme limitations she described in her 2021 medical opinion.  *Id.*  And the ALJ noticed similarly stark disparity between Dr. Kumar's drastic limitations and Plaintiff's self-described life activities.  *Id.* at 240 (admitting that Plaintiff "read[s] every[ ]day . . . [and] sew[s

---

[8] *See id.* at 278 (describing Plaintiff's condition as "stable" in 2015), 306 ("I can do about anything I want[ ]"), 335 (noting in 2011 "[s]trong positive test for arthritis[ but n]o inflammation[ or] side effects"), 339 (observing Plaintiff was "in no apparent distress" during a 2013 visit), 369 ("Rheumatoid arthritis[ ] significantly better compared to the last visit.  She notices improvement in her pain[ and] fatigue.  She reports current medications are helping her symptoms significantly."), 371 ("Gait is normal.  Range of motion in [joints] appears to be normal."), 377 (noting Plaintiff is "certainly doing a lot better compared to the last visit" and, consequently, denying Plaintiff's request for hydrocodone), 381 (reporting worsening pain in 2015 but also that "Orencia infusions are helping her significantly" and that her "[g]ait is normal" with apparently normal "[r]ange of motion in [her joints]"), 464 ("Rheumatoid arthritis[ ] doing very well on [prescription] Enbrel."); *but see id.* at 391 (noting complaints in late 2014 that current medications lost efficacy and required replacement).  Further, the record demonstrated that Plaintiff led a lifestyle inconsistent with her alleged symptoms.  *See id.* at 701 (Plaintiff "travelled, enjoyed gardening, and led an active life[style].");  *accord id.* at 30, 302, 468, 554.

[9] Relatedly, the ALJ highlighted that she found no objective records suggesting Plaintiff's alleged fibromyalgia, latent tuberculosis, and lupus erythematosus affected her exertional capacity.  *See, e.g.*, *id.* at 701–02.

for] 2-3 h[ou]rs per day").   The ALJ also observed that the form contained conspicuous formatting errors that strongly suggested adulteration.  *Id.*[10]

### 2. Mental Limitations

The RFC next considered Plaintiff's alleged mental limitations.  The ALJ acknowledged that "later records d[id] show *some* evidence of anxiety and depression; however, there is nothing in the record to suggest *any limitations*" from those conditions.  *Id.* at 703 (emphasis added).  For support, the ALJ pointed to the record.  She duly noted that Plaintiff, in her own function report, essentially denied any limitations beyond a mild concentration issue that only arose if taking pain medications.  *See id.*  The ALJ also cited approvingly to the medical opinions of SSA psychological consultants, who concluded that Plaintiff lacked any severe mental impairment because the record showed Plaintiff's mental state was "on a stable, steady[ ] course" and treated conservatively primarily through mild psychotropic drugs.  *Id.*  Consequently, the ALJ found "no more than minimal mental limitations" by the end of 2015 and, accordingly, constructed the RFC without mental limitations warranting RFC accommodation.

### C.  Step Five

At step five, the ALJ developed the record by questioning the vocational expert ("VE").  After classifying Plaintiff's previous occupations, the VE testified that a hypothetical person with Plaintiff's RFC could return to such work.  *Id.* at 705 (listing "assistant principal," light, SVP 7); *accord id.* at 750.  The ALJ found this testimony consistent with the Dictionary of Occupational Titles.  *Id.* at 705; *accord id.* at 749.  Thus, she found Plaintiff not disabled within the meaning of the Social Security Act.  *Id.* at 706.

---

[10] The entirely handwritten form referred to an "***above*** description of limitations" yet the date was provided below and, notable to the ALJ, was the only pre-filled, i.e., typed-out, writing on the form.  *Id.* at 704 (emphasis added).  And the ALJ also noticed that the date conspicuously listed July 2010, the start of the relevant time period, despite Plaintiff's first visit with Dr. Kumar occurring two years later.  *Id.*  But, in fairness, Dr. Kumar's records are not without their own internal inconsistencies.  *E.g.*, *id.* at 478 (listing "Never a smoker" three lines below writing "Ex-smoker" and "Former smoker.")

## V.  DISCUSSION

As explained above, Plaintiff's Motion and Reply present four arguments.  To reiterate: Plaintiff first claims that the ALJ failed to "meaningfully" consider Plaintiff's alleged mental limitations.  Second, she disputes the validity behind the ALJ's rationale for discounting Dr. Kumar's medical opinion as a treating physician.  Third, Plaintiff suggests that she could not have returned to her previous work during the relevant time period.  And fourth, Plaintiff characterizes all counterarguments as impermissible post-hoc reasoning.

### A.  The ALJ Properly Formulated the RFC

Plaintiff's criticism of the RFC follows a pattern the Court has rejected on multiple prior occasions.[11]  The pattern usually follows a sequence like: (1) emphasize that the ALJ must consider *all* the evidence; (2) assert that the ALJ's RFC failed to "*meaningfully* consider" or "account for" some alleged condition or limitation; (3) cite nothing to clarify what "meaningful" consideration entails; (4) insist the ALJ ignored evidence favoring the imposition of a limitation for said condition; (5) ignore the RFC's actual limitations to avoid having to explain how those limitations do not account for said limitation or condition; and (6) selectively cite only to the parts of the record that favor Plaintiff.  *See, e.g.*, Mot. at 22–23 (claiming that the ALJ's opinion lacks "a meaningful explanation" regarding why she chose to exclude mental limitations despite acknowledging one "mild" "paragraph B" limitation); *but see* AR at 703 (explaining that the RFC contains no mental limitations **because** "there is **nothing in the record to suggest any limitations** from anxiety or depression" (emphasis added)).

---

[11] This Court has rejected the same argument at least six times.  *See* Motion to Remand to Agency for Rehearing with Supporting Memorandum at 11–14, *Leedy v. SSA* (Civ. No. 16-224); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 5–12, *Franco v. SSA* (Civ. No. 17-821); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 8–12, *Lucero v. SSA* (Civ. No. 18-701); Corrected Motion to Remand to Agency for Rehearing with Supporting Memorandum at 7–12, *Young v. SSA* (Civ. No. 19-220); Motion to Remand for Rehearing with Supporting Memorandum at 13–27, *Munoz v. SSA* (Civ. No. 20-245); Motion to Remand at 12–13, *Marquez v. SSA* (Civ. No 21-451).  And this Court is not alone.  *See, e.g.*, Order by Magistrate Judge Jerry H. Ritter denying [ECF 22] Motion to Remand, *Martinez v. SSA* (Civ. No. 21-118).

The instant Motion is no exception.  Here, Plaintiff argues that the ALJ failed to "meaningfully consider" the RFC because, essentially, Plaintiff disagrees with how much weight the ALJ gave Plaintiff's preferred parts of the record.  The Court interprets this argument to be that the RFC lacks support from substantial evidence.  But such an argument fundamentally collides with the applicable standard of review, for it (1) identifies a factual inconsistency that the ALJ resolved, and (2) glosses over the presence of facially relevant evidence that goes both ways, and (3) challenges the persuasiveness of the evidentiary support behind the ALJ's decision.  *See* Mot. at 22–23 (acknowledging that the record presented conflicting factual evidence and that the ALJ resolved the conflict with record support—albeit, not Plaintiff's preferred disposition).

At a conceptual level, binding precedent forbids this Court from disturbing SSA decisions based on such a rationale.  When the record poses a factual inconsistency, and the ALJ resolves that conflict, the "substantial evidence" standard demands deference to the fact finder's choice and forbids re-weighing the evidence underlying that choice—unless, of course, the ALJ relied solely on evidence that no reasonable mind could "accept as adequate to support a conclusion."  *See, e.g.*, *Biestek*, 139 S. Ct. at 1154; *accord* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b).  Thus, this Court's discretion to consider record evidence is strictly limited to a categorical inquiry—***only*** whether the evidence is or is not relevant.  But Plaintiff does not credibly dispute the relevancy of the ALJ's cited facts.  She attempts instead to disguise her factual arguments as arguments alleging legal error—a litigation ploy the Court cannot permit.  This Court's role is not to reweigh the evidence or overturn the SSA's decision merely because it is unfavorable.  "Given the presence of substantial . . . evidence in the record to support the

ALJ's finding, [this Court is] **unable** to disturb it." *Raymond*, 621 F.3d at 1272 (emphasis

added).[12]

### B.  Substantial Evidence Supported the RFC Findings

An ALJ must evaluate a claimant's RFC by considering all relevant evidence, including

medical records, the observations of treating physicians, and the claimant's self-reported

limitations.  20 C.F.R. § 404.1545.  And when an 'ALJ indicates she has considered all the

evidence,'" the practice in the Tenth Circuit is "'to take the ALJ at her word." *Bales v. Colvin*,

576 F. App'x 792, 799 (10th Cir. 2014) (unpublished) (internal quotation and alterations

omitted).  But the ALJ's consideration of such evidence applies only to *credible* impairments

whose symptom severity is supported by *substantial* evidence.  *See generally* SSR 96-8p.  The

rote allegation of a fact, symptom, or condition, by itself and without objective support, is not

dispositive.  Nor does alleging such a condition or symptom substitute for properly alleging that

the symptom actually affects a claimant's RFC.  Further, the ALJ "need not engage in a

formalistic factor-by-factor recitation of the evidence when evaluating the functional effects of a

claimant's subjective symptoms," nor do the regulations require the ALJ to "discuss every factor

listed . . . ; they expressly provide that she *does not* need to do so." *Guillar v. Comm'r, SSA*, 845

F. App'x 715, 721 (10th Cir. 2021) (unpublished) (emphasis added) (quotations omitted) (citing

SSR 16-3p); *cf. Endriss v. Astrue*, 506 F. App'x 772, 775–76 (10th Cir. 2012) (unpublished)

(holding that an ALJ's decision may be read "as a whole").

### 1.  Exertional Limitations

In Plaintiff's view, Dr. Kumar's opinion was substantial evidence that the ALJ

improperly discounted.  She emphasizes that Dr. Kumar believed Plaintiff's pain symptoms from

---

[12] By the same token, Plaintiff makes no argument that enables this Court even to consider Plaintiff's third argument—that the Commissioner was wrong to conclude that she could have resumed her role as an assistant principal had she not chosen to take early retirement.

2010 to 2015 resisted treatment and points to Dr. Kumar's records for support.  Mot. at 24–25 (concluding that her treatment records were therefore consistent with her extreme opinion).  She also insists that Dr. Kumar's opinion—that Plaintiff's pain shortens her attention span—deserved accommodation in the RFC.  Mot. at 23; Reply at 2–3.  But elsewhere, Plaintiff identifies facts that the ALJ relied on and does not argue that those facts are inapposite.  *E.g.*, Mot. at 24 (citing, inter alia, AR at 454–61); *but see* AR at 702 ("[Dr. Kumar] said that [Plaintiff's rheumatoid arthritis [was] stable"); *accord* AR at 461 (Dr. Kumar's records stating that Plaintiff's "[r]heumatoid arthritis [was]. . . [r]easonably stable [in June 2012].").

Essentially, Plaintiff argues that Dr. Kumar's opinion was less inconsistent than the ALJ concluded it was.  Perhaps so, but the fact remains that Dr. Kumar's opinion was still inconsistent with her treatment records and Plaintiff's activities of daily living—at least, to some non-negligible degree.  *Compare* AR at 701–04 (summarizing records reporting normal physical examination results and positive response to treatments), *with* AR at 240 (reporting up to three hours of sewing, attending garage sales every weekend, and weekly sewing classes in July), *and* AR at 302 (reporting "doing a lot of work around the house" and interstate travel plans), *and* AR at 509 (reporting "[s]table" rheumatoid arthritis symptoms adequately managed by medications).  Plaintiff thus undercuts her own arguments by identifying "substantial evidence," both favorable and unfavorable, which triggers this Court's deference to the SSA's factfinder.  Mot. at 9–10; Reply at 1–2; *accord Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").  Absent Plaintiff showing that Dr. Kumar's opinion was completely consistent— which would require showing that the ALJ relied entirely on irrelevant evidence—this Court lacks the authority to reverse or remand.

Relatedly, Plaintiff challenges the ALJ's failure to expressly consider Dr. Kumar's opinion on her alleged mental limitations.  Mot. at 23–24 (emphasizing the consistency between the opinion and Dr. Castillo's test results); *see also* Reply at 2–3.  But this argument fails for the same reason.  Although "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (internal citations omitted).  Specifically, the ALJ need not discuss **controverted** evidence—*Chater* only requires explicit discussion of **uncontroverted** evidence.  But the ALJ established that Dr. Castillo's test results are controverted by Plaintiff's own statements affirmatively denying anxiety or depression and how mildly Dr. Castillo treated these alleged conditions.  *E.g.*, AR at 70; *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2007) (discussing, unlike here, **uncontroverted** evidence of mental limitations).

To summarize, both arguments fail for the same reason.  ALJs are permitted to make a finding of non-disability after weighing the probative evidence on both sides of the issue and concluding that the evidence of non-disability is simply more persuasive.  To require otherwise would force the Commissioner to find disability whenever any favorable substantial evidence exists in the record.  SSR 16-3p does not contemplate that, nor does binding precedent allow it.  This Court cannot reverse an ALJ's factual finding unless the decision rests only on a mere scintilla of relevant evidence.  That is not the case here.

### 2.  Non-Exertional Limitations

Plaintiff insists that "the ALJ provided *no* explanation for failing to include any mental limitations in the RFC."  Mot. at 22 (emphasis added).  But, as a preliminary matter, this is simply incorrect.  To the contrary, Plaintiff quotes the very portion of the ALJ's decision that expressly and unequivocally explained the rationale behind eschewing non-exertional

limitations. Indeed, the ALJ penned an entire paragraph explaining how Plaintiff failed to carry her burden, including this passage: "[r]egarding [Plaintiff's alleged] mental issues, the later records do show some evidence of anxiety and depression; however, there is nothing in the record to suggest any limitations from anxiety and depression [*sic*]." *Id.* (misquoting AR at 703).[13] Yet, Plaintiff inexplicably claims the record lacked any explanation. Such a clearly contradicted position can only be interpreted as Plaintiff disagreeing with the explanation, but mere difference of opinion does not empower this Court to usurp the SSA's role as factfinder.

Plaintiff next argues that the ALJ had to "meaningfully consider[ ] all of the evidence" and specifically highlights the GAD-7 and PHQ-9 test results of Dr. Carolyn Castillo. Mot. at 24; Reply at 2–4; *but see, e.g.*, AR at 339 (describing Plaintiff as "pleasant" and "in no apparent distress"), 479 ("We discussed that [Plaintiff] has . . . no clinical anxiety."), 605 (Plaintiff "den[ying] anxiety [and] depression" in March 2016). Plaintiff attempts to frame the ALJ's explanation as an inadequate reliance on her assessment at step two, but Plaintiff both mischaracterizes the record and misunderstands the precedent she cites for support.[14]

The Court sees two flaws in Plaintiff's position. First, she again fails to explain why the ALJ's reasoning does not constitute *meaningful* consideration. Here, the ALJ cited **Plaintiff's**

---

[13] Plaintiff's quotation continues, apparently accidentally splicing in a fragment of the following sentence. *Id.* ( . . . by the physicians treating her autoimmune disorders, but she did not seek treatment form [*sic*] a psychologist, psychiatrist, or other mental health specialist"). To avoid confusion, the ALJ did not reject Plaintiff's claimed mental imitations because the record lacked evidence from specialists but, rather, because the record was entirely devoid of evidence suggesting limitation.

[14] The ALJ rejected Plaintiff's attempted showing of mental limitations for an additional reason at step four—inconsistency—and explained why. The ALJ did not, as Plaintiff puts it, "simply disregard those impairments." Reply at 4. Moreover, Plaintiff syllogistically misreads *Chater* for the proposition that, when an ALJ (1) finds an impairment non-severe, and (2) the RFC does not incorporate mental limitations, then the ALJ contravenes *Chater*. Not so: *Chater's* technical holding rested on two non-events: a meager step-four explanation **coupled with** an RFC unsupported by substantial evidence. But this RFC, as explained elsewhere, was supported by substantial evidence. *See* AR at 696 (ALJ's step-two assessment), *and* Reply at 3 (citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)) ("[A] finding of non-severity at Step Two does not satisfy the [SSA's] burden"), *with* AR at 703 (ALJ's additional and distinct grounds during her step-four assessment), *and Chater*, 727 F.3d at 1065 (reasoning that the ALJ's step-four discussion "in the credibility portion of his RFC analysis"—like the ALJ did here—"**might** have been adequate" had it been supported by substantial evidence (emphasis added)).

*2015 statements* belying any limitation, and the ALJ conceptually distinguished the diagnosis of a condition from the effect, if any, that condition might have on RFC. *See* AR at 703. The ALJ apparently found that Plaintiff's self-assessment of no functional limitations, which goes against her interest in seeking disability, speaks more directly to potential RFC impacts than the mere fact of Dr. Castillo's diagnosis. To the extent Plaintiff's position is another invitation to re-weigh the evidence, the Court must decline. Second, these arguments rest on a misapplication of *Chater*. Dr. Kumar's own records and her patient's 2015 testimony contradicted Dr. Kumar's opinion on Plaintiff's supposedly severely limiting symptoms. Thus, as controverted evidence, the ALJ was not required to discuss every scrap of "positive findings"—despite Plaintiff's urging to the contrary.

To conclude, the ALJ adequately discussed why her assessment of Plaintiff's symptoms led her to formulate an RFC devoid of mental limitations. Factual inconsistencies aside, evidence of a mental condition does not equate to a finding of limitation, which makes sense given step four's analytical two-step of (1) identifying a condition and (2) separately assessing whether its symptoms, if any, actually affect the RFC. Here, as the ALJ noted, Plaintiff offered insufficient, controverted evidence of any actual mental limitation and even denied actual limitations back in 2015.[15] At most, Plaintiff highlighted evidence of a condition and hoped the SSA would carry her burden for her and infer a limitation. The Commissioner refused to do so, and neither will this Court.

### C.  The ALJ Properly Assessed the Medical Opinion Evidence

As detailed above, the ALJ must consider each opinion, assign it a degree of weight, and explain her reasoning, and that reasoning must generally conform with at least some of the six

---

[15] Plaintiff did attempt to establish a mild attention-span deficiency, but nothing in the record raises it to the level of a limitation that requires RFC accommodation. To lose focus is an innately human trait, and as the ALJ noted, nothing in the record establishes the need for special solicitude to mild distractability. AR at 696–97.

*Watkins* factors.  If that opinion comes from a treating physician in a pre-2017 case, the ALJ must also specify whether the opinion receives controlling weight.

Here, Plaintiff takes issue with the ALJ's consideration of Dr. Kumar's opinion and submits that the ALJ reached the wrong conclusion.  Her argument essentially amounts to: (1) emphasizing that Dr. Kumar is a treating physician and (2) stressing Dr. Kumar's conclusions.  *See* Mot. at 23.  But this argument misses the point.  As explained above, the ALJ holds exclusive dominion over the resolution of factual inconsistencies between the record and a medical opinion unless the ALJ relies solely on evidence unacceptable to all reasonable people.  *See, e.g.*, *Biestek*, 139 S. Ct. at 1154.  And it is well-established that "to give an opinion controlling weight simply because it is the opinion of a treating source" is error when that opinion "is inconsistent with the other substantial evidence in the case record."  *Watkins*, 350 F.3d at 1300 (internal quotations and citations omitted).

Given the standard of review, the only argument available to Plaintiff is that the ALJ committed a procedural violation by essentially failing to comply with *Watkins*.  But this argument is equally futile, as the record indicates that the ALJ expressly discussed Dr. Kumar's medical opinion, assigned it a particular weight, and reasonably explained her reasons behind the chosen weight.  AR at 703–05.  Specifically, the ALJ discounted Dr. Kumar's opinion for three reasons: (1) her opinion starkly deviated from the observations in her records, (2) her opinion conflicted with Plaintiff's self-reported activities of daily living, and (3) the ratio of handwriting to typing gave the ALJ suspicions of outside influence.  *Id.* at 701–04.  Moreover, the ALJ's rationale corresponds to at least four *Watkins* factors: factor 1, "the length of the treatment

relationship";[16] factor 3, "the degree to which the physician's opinion is supported by relevant evidence"; factor 4, "consistency between the opinion and the record as a whole"; and factor 6, "other factors . . . which tend to support or contradict the opinion." *Watkins*, 350 F.3d at 1301. Even if Plaintiff may be right that the ALJ did not cite the strongest evidence, it is not this Court's role to reweigh that evidence unless it was categorically inapplicable. *See, e.g.*, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

In sum, the ALJ's cited inconsistencies are "adequate reasons" explaining why Dr. Kumar's opinion did not receive controlling weight, and the ALJ cabined her assessment to the scope of *Watkins* factors as required. *Cf.* Mot. at 20. The Court is mindful that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001). This analysis comports with the required legal framework. *Watkins* requires nothing more.

### D.  The Commissioner Is Not Relying on Post-Hoc Rationalization

All federal agencies must base their decisions on "relevant data and articulate a satisfactory explanation" for the agency's chosen action that rationally connects the facts found to the choice made. *E.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *accord Motor Vehicle Mfg. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 48–49 (1983). Administrative agencies litigating in federal court cannot rely on grounds not previously relied upon in prior administrative proceedings. *See, e.g.*, *DHS*, 140 S. Ct. at 1891.

Plaintiff's last argument characterizes the entire Response as post-hoc rationalization based on a narrow reading of Tenth Circuit precedent. *See* Reply at 6 (suggesting that the SSA cannot justify denial "u[sing] ***facts*** and rationales not contained within the four corners of the

---

[16] The ALJ also found that Dr. Kumar's opinion was based on Plaintiff's post-2015 condition. AR at 703. Within her discretion, she concluded that Dr. Kumar's opinion related only to Plaintiff's condition after 2015. *Id.*; *accord Watkins*, 350 F.3d at 1301. The Court has no reason to disagree.

Unfavorable Decision." (emphasis added)).  But Plaintiff's position runs contrary to the very

case law she cites.  Her confusion apparently stems from her conflation of a "factual finding"

with a fact itself.  To see the distinction, take the exemplar Tenth Circuit decision in *Allen v.*

*Barnhart*.  The *Allen* Court reversed the Commissioner's grids-based denial of benefits because

the ALJ inexplicably used a different RFC from the one he formulated—a different fact that led

to a different factual finding altogether.  *See Allen v. Barnhart*, 357 F.3d 1140, 1143–45 (10th

Cir. 2004).  Plaintiff cites this case as if it invalidates the use of facts the ALJ did not expressly

cite herself, but the *Allen* decision does not discuss whether facts not explicitly cited but

consistent with the ALJ's factual finding are nevertheless post-hoc rationalization.  *Id.*; *cf.*

*Darnell v. Berryhill*, 2018 WL 1306281, at *37 (W.D.S.D. Mar. 13, 2018) (recognizing post-hoc

rationalization in the Commissioner's attempt to recast the ALJ's summary acceptance of a

medical opinion—a factual finding—as only partial acceptance—which would be an altogether

different factual finding).[17]

Here, the Response does not raise counterarguments based on novel factual findings that

the ALJ never made.  Rather, the Response restricts itself to the same grounds and factual

findings the ALJ produced—namely, inconsistency, contradiction, and critical gaps in the record.

*See, e.g.*, Resp. at 7–23.  Granted, the Response cites the record more meticulously than the ALJ

did, but the Response's facts existed in the record before the ALJ, and they are cited here to

elaborate on the agency's original reasoning.  *Alpharma, Inc.*, 460 F.3d at 5–6.  Post-hoc

---

[17] Plaintiff also cites *Brick v. Colvin*, another unreported case outside of this District where the magistrate judge
seemingly misunderstood the post-hoc rationalization principle altogether.  *See Brick v. Colvin*, Civ. No. 16-cv-
1117-KMT, 2018 WL 1193537, at *4 (D. Colo. Mar. 8, 2018) (citing *Allen v. Barnhart*) (mislabeling as post-hoc
rationalization the SSA's attempt to explain how its ALJ's decision followed *Watkins* because the ALJ did not
***expressly*** name each *Watkins* factor name when discussing and citing record evidence—a view regularly rejected by
this Court).  Ironically, the *Brick* court did exactly what Plaintiff condemns here.  *Brick* concluded with the judge
finding disability, which contravenes the very outcome that the post-hoc rationalization principle seeks to avoid—
"usurp[ing] the ALJ's primary responsibility to determine the question in the first instance."  *Id.* at 1145 (foregoing
the possibility of remand altogether).

rationalization depends on the rhetorical *position*—it does not occur merely because agency counsel cites then-existing-albeit-not-cited facts from the record consistent with the agency's final decision.   The explanation submitted here remains conceptually identical to the Commissioner's original grounds and factual findings.  That is not post-hoc rationalization.

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.